5 So.2d 732

### STATE v. WOODS.
### 6 Div. 855.

Supreme Court of Alabama.
Jan. 15, 1942.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edward Thornton, Asst. Attys. Gen., for the State.

186

Dan P. Barber, of Birmingham, for appellee.

Benners, Burr, McKamy & Forman and Frontis H. Moore, all of Birmingham, amici curiæ.

THOMAS, Justice.

This appeal seeks a construction of certain provisions of the revenue statutes and is different from the question dealt with in State v. Denson, ante, p. 177, 5 So.2d 729.

The assessment in question was made against A. H. Woods by the State Department of Revenue on January 25, 1941, pursuant to the provisions of the applicable statute. Code 1940, T. 51, §§ 140, 768. In accordance with the statute notice of appeal was filed and supersedeas bond given to the register of the Circuit Court of Jefferson County, sitting in equity. Thereupon the State Department of Revenue filed a transcript of the proceedings in the State Department of Revenue with the register of said court. Pursuant to Equity Rule No. 38 of the Circuit Court of Jefferson County, A. H. Woods filed a bill in the nature of a bill of complaint setting out the facts on which his claim was based. To this bill, the State of Alabama filed a demurrer, and on March 7, 1941 said demurrers were overruled. The state conceded that the facts alleged in the bill were correct, but insisted such facts were not sufficient to exempt A. H. Woods from the payment of the sales tax. The circuit court rendered final judgment in favor of A. H. Woods of nonliability for said sales tax.

The bill, in the nature of a bill of complaint, alleged that A. H. Woods was engaged in business in Jefferson County, Alabama, as a peanut vender for the period commencing March 1, 1939, and ending December 31, 1939. The peanuts were sold through vending machines which said Woods placed in various retail establishments on contract with the owners thereof. The peanuts were obtained by purchasers by inserting a penny in the slot machine and a given quantity of the peanuts were discharged therefrom. The machines were "serviced" by Woods, in that he inspected them at the various localities at regular intervals and refilled the machines when necessary. Woods obtained the money so deposited and *paid* the *owners* of the *premises where machines were located a definite percentage* of receipts therefrom.

On this statement of facts complainant Woods insisted (1) that he was not liable for the sales tax, since he was making sales at "wholesale" within the meaning of the Sales Tax Act, and (2) if he was engaged in selling at retail, he was unable to collect the amount of the tax due on the penny sale. The state insists that the trial court was in error in holding that A. H. Woods was not liable for said tax and erred in overruling the demurrers interposed to the bill.

The assessment in question was made under the provisions of Code 1940, T. 51, § 753, reading, in part, as follows: "There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to be determined

by the application of rates against gross sales, or gross receipts, as the case may be, as follows: * * * Provided, however, that any person engaging or continuing in business as a retailer and wholesaler or jobber shall pay the tax required on the gross proceeds of retail sales of such business at the rates specified, when his books are kept so as to show separately the gross proceeds of sales of each business, and when his books are not so kept he shall pay the tax as a retailer, on the gross sales of the business. * * *"

█ In the enforcement of the sale tax this court declared that the burden of such tax is on the consumer, and that such sales are the basis for computing the tax. These holdings are illustrated by the recent decisions of Long v. Roberts & Son, 234 Ala. 570, 176 So. 213, and State Tax Commission v. Hopkins, 234 Ala. 556, 176 So. 210. See, also, Graybar Electric Co. v. Curry, 238 Ala. 116, 189 So. 186; Id., 308 U.S. 513, 60 S.Ct. 139, 84 L.Ed. 437; Id., 308 U.S. 638, 60 S.Ct. 259, 84 L.Ed. 530.

The Graybar Electric Co. v. Curry case, supra, was decided June 8, 1939, shortly prior to the passage of the vending machine statute of date of Sept. 13, 1939. General Acts 1939, p. 519, Code 1940, T. 51, § 613.

The latter statute was no doubt passed because of the inherent nature of vending machines and created a special class of consumers that were liable for the burden of such tax. The act applies to the consumption tax measured by the retail sale price of any article dispensed through such machines where the tax on such sale is not evidenced by stamps. In this the specific effort of the Legislature was to make the burden, on account of such tax, the same as that of other consumers. It was a valid classification to prevent discrimination in the amount of the tax paid.

The vending machine statute (Code 1940, T. 51, § 613) contains, among other things, the following provisions: "For each machine for vending gum, candy, cigarettes, milk, soft drinks, or other articles, or on which a person is weighed, or on which music is played: Where a machine is operated by pennies, one dollar; where a machine is operated by nickles or coins of larger denomination, eight dollars. * * * Any person operating or permitting the operation of a vending machine dispensing packages or in quantities less than a package of cigarettes, or any article on which there is an excise tax the payment of which is evidenced by stamps, without first having paid the tax thereon by affixing the required stamps to the original package as required under section 718 of this title shall be guilty of a misdemeanor and punished as provided in such section for failure to pay said tax. * * * The privilege license required by law or the vending machine license issued to cover vending machines stall be securely affixed in full view to each such vending machine before said machine is placed in operation or use. * * * Provided further that for the purpose of any excise or consumption taxes the payment of which is not evidenced by stamps, levied on any of the articles dispensed through such machine, the person in whose place of business such machine is located shall be considered the consumer of such articles and shall be liable for such taxes measured by the regular retail price thereof. (Ib.; 1936–37, Ex Sess., p. 32; 1939, p. 519)"

█ The provisions of the statute aforementioned are to be considered together and as important parts of the general system of the imposition of excise taxes. It will be noted that no question of the liability of the owner of the place where the vending machine is operated to the owner of the vending machine is here for consideration. The immediate question for decision is the liability of the owner of the vending machine for the excise tax imposed by the general sales tax statute of the State of Alabama.

In other jurisdictions there are the holdings to effect that persons engaged in the business of operating vending machines which dispense tangible personal property *are engaged in the business of selling at retail* and fall within the meaning of the sales tax laws. Rowe Cigarette Service Co., Inc., v. Graves et al., 247 App.Div. 852, 286 N.Y.S. 683; In re Cigarette Licenses of Vending Machine Corp., 183 Okl. 427, 82 P. 2d 1069.

In 111 A.L.R. 755, 756, there are annotations on the validity, construction and application of statutes or ordinances prohibiting or regulating automatic vending machines. Under such subject we find the case of Dunlap v. State, 16 Ala.App. 440, 78 So. 638, used as an illustration. It is there observed: "In holding constitutional a statute imposing a tax or license of $5 per annum on every penny-in-the-slot machine, the court in Dunlap v. State, 1918,

16 Ala.App 440, 78 So. 638 (writ of certiorari denied in, 1918, 202 Ala. 698, 80 So. 893) (upholding a conviction of operating without a license such a machine, used in selling chewing gum), stated that the law was not a prohibition of the use of such a machine, but merely required a license for its use, which was not in violation of constitutional provisions as to extent or uniformity of tax rate upon property or as to discrimination; and it also stated that the license was charged for the use of the machine as a business, and therefore the fact that an ad valorem tax was paid on the value of the machine itself would not make the license double taxation; that the power to tax included the power to license, *and to compel the payment of the tax as a condition precedent to engaging in the business;* and that the amount of the imposition was within the discretion of the Legislature." [Italics supplied.]

This case was cited with approval in Hale v. State, 217 Ala. 403, 116 So. 369, 58 A.L.R. 1333. This general rule was not changed by the Legislature. Gen. Acts 1939, p. 519, Code Alabama 1940, T. 51, § 613. Such is the effect even though no tokens are furnished for the amount of the tax on one cent sales. Tanner v. State, 28 Ala.App. 568, 190 So. 292, certiorari denied 238 Ala. 269, 190 So. 295.

The harmonious construction of these statutes is to the effect that all persons engaged in the business of selling at retail tangible personal property (not expressly exempt) are subject to such tax even though the seller fails or is unable to collect the amount of such tax from the purchaser under the provisions of the sales tax law. The foregoing is illustrated by many decisions in this and other jurisdictions. Doby v. State Tax Commission, 234 Ala. 150, 174 So. 233; Southern R. R. v. Curry, 239 Ala. 263, 194 So. 523; Tanner v. State, supra; Code 1940, T. 51, §§ 753, 754, 756–762. The tax is due and collectible. General authorities that are pertinent are: Queens Vending Machine Corp. v. City of New York, 246 App.Div. 594, 284 N.Y.S. 801; Matter of Atlas Television Co., 273 N.Y. 51, 6 N.E.2d 94; Jensen Candy Co. v. State Tax Comm., 90 Utah 359, 61 P.2d 629, 107 A.L.R. 261; Roth Drugs v. Johnson, 13 Cal.App.2d 720, 57 P.2d 1022; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11; Wilson v. City of Philadelphia, 330 Pa. 350, 198 A. 893.

In 110 A.L.R. 1488, 1489, it is said: "Where the statute does not exempt sales on which the tax would be less than 1 cent, and as a result the seller finds it impossible or impracticable to collect the tax from the purchaser, the question arises as to whether the tax lacks such uniformity as to violate constitutional requirements or equality under the laws or uniformity of taxation. In stores in which the sales are normally for 5 or 10 cents, this becomes a serious problem under the usual tax rate of 1 or 2 per cent, because the tax is so small that there is no legal tender with which the purchaser can pay it, and he rightly refuses to pay a full cent as tax, since that sum may by comparison greatly exceed the actual tax. Yet if the seller bears the burden of the tax on all these transactions, his loss mounts steadily with the volume of such sales. The courts, however, have uniformly sustained the sales tax notwithstanding this objection, saying that by 'breakdown' schedules or other means the seller can pass the tax on to the consumer. Roth Drugs v. Johnson, 1936, 13 Cal.App.2d 720, 57 P.2d 1022; W. F. Jensen Candy Co. v. State Tax Commission, 1936, 90 Utah 359, 61 P.2d 629, 107 A.L.R. 261; State Tax Commission v. Logan, 1936, 88 Utah 406, 54 P.2d 1197. As to computation of sales tax, see annotation in 107 A.L.R. 267 [License, § 77]." To like effect are decisions cited in 117 A.L.R. 846, 849.

In 128 A.L.R. 893, 898, it is said: "So, as against the contention that the state Constitution and the Fourteenth Amendment to the Federal Constitution were violated by a provision of the Alabama sales tax statute of 1937, which made it a misdemeanor for a vendor to fail or refuse to add to the sales price and collect from the purchaser the amount due by the taxpayer on account of the sales tax, or to refund or absorb, directly or indirectly, any portion of the tax, the court, in Tanner v. State, (1939) 28 Ala.App. 568, 190 So. 292 (writ of certiorari denied in (1939) 238 Ala. 269, 190 So. 295), said: 'It may appear that the act of the legislature, compelling a retail dealer to collect from a purchaser of merchandise a certain tax over and above the contract price, in order that the purchaser shall be made to pay a tax due by the seller, is unusual and contrary to the heretofore accepted assumption that such requirement would be the taking of property without due process of law, but it seems we have moved into another period in the development of our

civilization, and the decisions of the courts of last resort have yielded to the progressiveness of our business dealings. It therefore becomes the duty of the citizens to fall in line and to obey the law as it is written until the same may be repealed by the representatives of the people.' "

Under our statutes the operators of vending machines are liable for the sales tax irrespective of the fact that, under his contract with the owner of the business where the machine is located, he may or may not collect the amount of the tax from the owner of the premises so furnishing the space for the operation of the machine. We may observe, as a matter of common knowledge, that many places of business rent space in their establishments to third persons who may and do conduct their own and different businesses in such space or department so rented. Such space or department becomes, and is, a separate place of business,—the business of such third party. If, therefore, a vending machine owner rents (method of payment immaterial) space for a vending machine and such space becomes his place of business (special or limited), in the conduct of his business he thereby makes himself, under the foregoing tax statutes, liable for the tax to the state within the terms of the general sales tax and the vending machine statute in question.

It follows from the foregoing that the trial court was in error in vacating the final assessment made against A. H. Woods by the State Department of Revenue. It results that the decree of the trial court is reversed and a decree here rendered for the amount of the assessment made against Woods by the Department of Revenue of the State of Alabama. This assessment will be made a part of the statement of fact.

Reversed and rendered.

BOULDIN, BROWN, FOSTER, and LIVINGSTON, JJ., concur.

GARDNER, C. J., dissents.

KNIGHT, J., not sitting.

GARDNER, Chief Justice (dissenting).

I am persuaded the law makers by § 613, Title 51, Code 1940, have made a classification as to vending machines and by the concluding proviso therein expressly stipulated that the "person in whose place of business such machine is located shall be considered the consumer of such articles and *shall be liable for such taxes measured by the regular retail price thereof.*" (Italics supplied.)

In that respect it is in a sense an amendment of the sales tax. I therefore think the tax should be collected from the person in whose place of business the machine is located.

I forego further discussion, and respectfully dissent.